HENDRYX et al. v. PERKINS.

(Circuit Court of Appeals, First Circuit.  February 13, 1902.)

No. 378.

1. EQUITY—DECREE—CONFORMITY TO BILL

A bill for the vacation of a prior decree of the same court, which charges fraud as the ground for the relief asked, will not sustain a decree granting such relief on the ground of mistake of fact, even though such mistake related to the state of the pleadings at the time of the hearing, and was shared by the court, and prevented a determination of the cause on the merits.

2. APPEAL—APPEALABLE DECREE—BILL TO IMPEACH DECREE FOR FRAUD.

A bill to impeach a prior decree for fraud is an original bill, although, when filed in the court which rendered the decree attacked, one in the nature of a bill of review; and a decree entered on such bill, vacating the prior decree and restoring the parties to their former situation in that cause, terminates the litigation on the second bill, and is therefore final and appealable, whether it leaves further proceedings to be taken in the original suit or not.

3. SAME—DISCRETION OF TRIAL COURT

A bill to vacate a decree for fraud, which, although filed in the same court, and in the nature of a bill of review, may be filed, as a matter of right, without leave of court, is not addressed to the absolute discretion of the court of primary jurisdiction, but to its judicial discretion, and a decree granting or denying the relief prayed for is reviewable on appeal.

4. DECREE—BILL TO VACATE FOR FRAUD—LACHES.

Neither a bill to vacate a decree for fraud nor a bill of review can be maintained after a lapse of nine years, during all of which time the complainant had knowledge of the decree, when no sufficient facts in excuse of the delay are alleged.

Aldrich, District Judge, dissenting.

Appeal from the Circuit Court of the United States for the District of Massachusetts.

The following is the opinion of the court below:

COLT, Circuit Judge (orally).  In this case I thought it would be better to send for counsel and state to them certain conclusions which I have reached, rather than to file a written opinion in the first instance.  This suit was brought in the state court December 8, 1883.  It is a suit upon a license contract dated October 4, 1878.  Under the license the fees were paid to January 1, 1883.  The complainant seeks an account from that date.  The subject-matter of the license was bird-cage springs.  The suit was removed to the circuit court in May, 1884.  In November, 1884, the defendants demurred to the bill.  One of the grounds of demurrer was that the plaintiff had an adequate remedy at law.  On April 9, 1885, the court sustained the demurrer without prejudice to the complainant to amend and replead in this court.  On April 14, 1885, the complainant divided his action, and filed a bill for discovery merely on the equity side of the court, and a declaration at law on the law side thereof.  On April 28, 1885, the defendants filed a demurrer to the bill of discovery, which was overruled May 11, 1885.  On the same day the defendants filed an answer to the bill of discovery.  On May 22, 1885, a motion of the complainant to file additional interrogatories was granted, and the defendants ordered to answer on or before June 1st.  On May 27th the time to answer interrogatories was extended to June 4th.  On June 3d the amendments to the answer were filed.  On June 12th the complainant filed a supplemental bill, changing the bill for discovery to one for discovery and relief.  On June 23d leave to file the supplemental bill was granted.  On the same day the court ordered the defendants to bring their account under the bill of discovery down to May 22, 1885, the date of filing the additional

114 F.—51

interrogatories; the additional account to be filed on or before June 29th. In obedience to the order of court, the defendants filed an amended answer June 29th, bringing their account down to May 22, 1885. In their answer and amended answer to the bill of discovery, the defendants had set up, among other things, that there was a revocation of the license on January 1, 1883, and consequently that they could not be called on to disclose any account beyond that date.

On June 30, 1885, the situation was this: The defendants to the bill for discovery had brought their account down to May 22, 1885; and at the same time in their answers had stated why they did not think they should be called upon for this discovery. Further, the complainant on June 23d had been allowed to file a supplemental bill, changing the bill for discovery into a bill for discovery and relief. On June 29th the complainant moved for a final decree, or to set the case down for hearing on the bill and answer. This was irregular, and should not have been entertained. There was no hearing to be had, and no decree to be entered on the bill for discovery, as the complainant was only entitled to use the answer of the defendants as evidence in his action at law. That is what a bill of discovery is brought for. There is no such thing as setting down a bill of discovery for hearing upon bill and answer. I am aware that the complainant takes the position that there was another answer, which was filed on June 29th, which was an answer to the bill for discovery and relief, or the supplemental bill. There is no proof that any such answer was ever filed until July 21st following. The amended answer which was filed June 29th was the answer to the bill of discovery, and brought the account down to May 22d of that year. In that amended answer the defendants stated the reasons why they thought they should not be called on for that accounting. There is no proof of any nature or description that there was any other answer filed at that time. On the contrary, the facts and circumstances conclusively negative any such contention. The supplemental bill was not allowed until June 22d, and under the rule the defendants had until the August rules to file their answer. That bill covered the whole case, and required the defendants to make full answer. Rule 57 is perfectly clear when you look at its terms. It contemplates that a supplemental bill shall be filed upon a rule day. That rule day would have been in July, and the defendants would have until the next succeeding rule day to answer. "Whenever any suit in equity shall become defective from any event happening after the filing of the bill (as, for example, by change of interest in the parties), or for any other reason a supplemental bill, or a bill in the nature of a supplemental bill, may be necessary to be filed in the cause, leave to file the same may be granted by any judge of the court on any rule day, upon proper cause shown and due notice to the other party; and, if leave is granted to file such supplemental bill, the defendant shall demur, plead, or answer thereto on the next succeeding rule day after the supplemental bill is filed in the clerk's office, unless some other time shall be assigned by a judge of the court." The complainant maintains that the paper which was filed upon June 29th was an answer to the supplemental bill. I must conclude that he is mistaken. We are not entirely in the dark as to what that paper was. The complainant did not desire to have anything filed in answer to his bill for discovery except the bare account. He thought other matters were irregular, and therefore we find that on July 14th following he made a motion to strike out part of the answer. The inference from this might be that the answer was upon the files at that time, or at least that the complainant knew the contents of that answer. He moved to strike out the portions of that answer which did not relate to the account but were a defense to any accounting. We have, further, the letter-press copy of Mr. Roberts, counsel for the defendants, of this amended answer; and that shows conclusively that it is the amended answer to the order of the court which was made upon June 23d. Nor is it reasonable to suppose that the defendants would come in and answer the supplemental bill five or six days after it was filed. I am therefore satisfied that the copy of the amended answer which was allowed to be filed by the court at a later date in 1887 is a copy of the original answer which was filed on June 29, 1885, and which was lost from the files.

On July 21st, the defendants filed an answer to the supplemental bill for discovery and relief, and the court proceeded to a hearing on this bill and answer. This is most material. The complainant objected to any hearing upon this bill and answer, and the court had no right to set the case down for hearing, unless upon motion of the complainant or with his assent. That hearing took place under a mistake of all parties.—the counsel for the complainant, because he supposed that the case had been set down for hearing upon the bill and answer as they stood on June 30th, when it could not have been so set down under the facts as I find them; and under a mistake of the court and of the counsel for the defendants in setting the case down for hearing upon the bill and answer of July 21st. The result is that the complainant has not been allowed to make out his case. There has been no hearing upon the merits. There was a mistake of fact for which I think the parties, the counsel, and the court were all to a certain extent responsible. The court undertook to render a decision and enter a decree upon the bill and answer filed on July 21st, which was a wrong proceeding on its part. To be sure, the complainant contended for a position which was untenable, and which helped to mislead the court; but that affords no justification of the course which was pursued.

The serious objection to granting the complainant any relief in this case is laches. It appears, however, that the position of the parties is substantially the same as it was when the final decree was entered. Under these circumstances, there having been a clear error, which was not discovered until the present time, I believe that the court should endeavor, if possible, to correct it. We need not say who is liable for it,—the complainant, the defendants, or the court. That fundamental error was in setting this case down for hearing upon the bill and answer filed on July 21st, against the protest of the complainant, upon an answer to the merits of the supplemental bill. There are some things in the petition and in the bill for review which the court deems entirely irrelevant, and which ought, perhaps, to be stricken from the records of the court. There is not a particle of evidence to my mind in this record that anybody connected with this case has been in the least degree guilty of any fraudulent practice of any nature whatsoever. It is true that it does not appear that the then clerk of the circuit court entered upon his minutes the answer which was filed on June 29th; but this was no more than a casual omission. There is no proof of any intention to injure the complainant. It does appear that the answer could not be found later. It would rather seem that it was on the files of this court on July 14th, when the complainant filed his motion to strike out a portion of the amended answer. It may have been among the papers when the case was heard in Providence, and it may have been mislaid by me, and therefore not returned to the clerk's office with the papers.

Under all the circumstances, I have decided to take the responsibility of allowing this case to be reheard, leaving my action to be reviewed by the appellate court. I propose, therefore, to enter an order that the final decree entered on March 31, 1888, be vacated; that the copy of the amended answer filed on the 31st day of March be treated in all respects as the amended answer to the bill for discovery, ordered by the court on June 23, 1885, and which has been lost from the files of the court; that all other opinions, motions, and orders made or entered subsequent to July 21, 1885, be vacated; and that the cause stand upon the pleadings as they appear on the 21st day of July, 1885.

Lauriston L. Scaife (William L. Bennett and Charles M. Reed, on the brief), for appellants.

John M. Perkins, in pro. per.

Before PUTNAM, Circuit Judge, and ALDRICH and BROWN, District Judges.

PUTNAM, Circuit Judge. This case arises by an appeal from a decree on a bill, sometimes styled in the record a "bill of review," filed pursuant to leave granted by the circuit court. Although, as

Mr. Perkins, the appellee, justly says, the bill is one of the class which may be filed without leave first obtained, we also may, for convenience, at various points, name it a bill of review. Perkins commenced a proceeding of some nature against the appellants in the courts of Massachusetts. The appellants removed this litigation to the circuit court, where the docket entries commence: "May term, 1884, May 15th, entered by defendants. Removed from state court." The next entry to which we need call attention is that of April 14, 1885: "Bill for discovery filed. Defendants to answer within two weeks. Declaration at law filed, and transferred to law docket." On June 12, 1885, what was styled a "supplemental bill" was "presented to the court," and, on June 23d, "leave to file supplemental bill" was granted. On July 21, 1885, appears the following entry: "Answer to bill, amended so as to become a bill for relief, filed." From this we draw the conclusion that what was styled the "supplemental bill" was, in effect, an amendment to convert the bill of discovery into a bill for relief. The next docket entry is, "Heard on bill and answer." This occurred at Providence, in the absence of the clerk, so no date is given; but it was between July 21, 1885, and January 13, 1886, and, probably, on July 28th. This was followed by an opinion, on January 13, 1886, to the effect that the bill must be dismissed. The subsequent proceedings will be referred to hereafter so far as necessary. On June 29, 1885, it is alleged that an answer of some kind was filed by the present appellants, the then respondents, the true nature of which will be given hereafter.

No replication had been filed, and the record before us does not show that the complainant moved to have the case set down for hearing. Therefore in that particular the record is, on its face, defective; and unless, either expressly or by inference, this was waived by the complainant, he was entitled as a matter of right to a bill of review for error of law. But, ordinarily, the right to file a bill of review of this nature expires with the time limited by statute for an appeal. Thomas v. Brockenbrough, 10 Wheat. 146, 6 L. Ed. 287; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97; Reed v. Stanley, 38 C. C. A. 331, 97 Fed. 521; Id., 179 U. S. 682, 21 Sup. Ct. 915, 45 L. Ed. 384; Blythe Co. v. Hinckley (C. C. A.) 111 Fed. 827, 837; Story, Eq. Pl. (10th Ed.) § 410. The decisions with reference to this rule happen to have been applied to cases where, by the statute, there was an existing right of appeal. In the present case there is nothing in the record to show whether the amount involved permitted an appeal to the supreme court; but, assuming that it did not, there is, as we will see further on, nothing justiciable in the present proceedings with reference to any such error of law.

The final decree in the original cause was entered on March 31, 1888, and, on October 13, 1897, after a lapse of more than nine years, the appellee presented his petition for leave to file the bill the proceedings on which are now before us. The bill, in some particulars, departs from the petition, and also it may be defective in some of its details. The appellants made a motion to strike it from the files by reason of these irregularities, and the motion was refused. We do

not, however, perceive any proper assignment of error on this point. The assignments to which our attention is called are of a too general character to raise technical questions of this nature. However, this will all disappear as we go on.

The gravamen of the present bill is that in the original cause the respondents filed an answer on June 29, 1885; that the complainant did, in fact, consent to a hearing on bill and answer, although the docket entries do not show it, but that it was his understanding that the hearing was to be on the bill and the answer of June 29th; that subsequently, and before the hearing, the respondents fraudulently withdrew that answer, and fraudulently interposed in its place the answer of July 21st; that the court, as well as the complainant, was unaware of the fraudulent substitution of one answer for the other; that the court understood that the complainant's consent to a hearing applied to the answer filed on July 21st; and that it proceeded to hear and dispose of the case on the bill and that answer. The bill alleges that the court, as well as the complainant, was deceived, to use its language, by "the fraud and trickery which were practiced upon him and upon the court." What has been said constitutes the pith of this bill, although it contains enlargements of allegations which put the matter in somewhat different forms. These are confused, as will appear from the following extracts:

"Your complainant did not know of this fraud and trickery which was practiced upon him and upon the court until January, 1886, when the court ordered complainant's bill to be dismissed. The false and unlawful answer filed on July 21, 1885, denied every right claimed by complainant, and the true and correct amended answer to the bill for discovery and relief was never seen by the court. On July 28, 1885, complainant protested against any consideration being given to the so-called amended answer, filed on July 21, 1885, it being a second answer to the same matter, and was unlawfully interpolated among the papers in this suit after the cause was submitted to the court on bill and answer, and was not filed with the consent of the court, as it could only have been lawfully filed and considered." "As the case now stands, defendants have, as a practical fact, been allowed to put in new testimony in their behalf, and destroy the old and correct testimony after the cause has once been submitted to the court; and this without the knowledge and consent of the court, and against the protest of complainant."

These allegations do not weaken our statement that the gravamen of this bill is fraud. Although the complainant alleges that he protested against a hearing on the answer of July 21st, yet nothing of that character is made the basis of a specific and independent proposition; and everything rests on the background of the claim that the interposition of that answer was fraudulent.

The decree on the bill of review was entered on December 13, 1900, in the following language:

"This cause came on to be heard at the October term, A. D. 1899, upon the pleadings and proofs, and was argued by counsel for the respective parties, and now, upon consideration thereof, to wit, December 13, 1900, it is ordered, adjudged, and decreed as follows:

"First. That the final decree entered on the 31st day of March, A. D. 1888, in the cause in equity No. 2,023, be, and the same is hereby, set aside and vacated.

"Second. That the copy of the amended answer filed on the 31st day of March, A. D. 1888, in cause No. 2,023, stand, and be treated in all respects as the amended answer to the bill for discovery, ordered by the court on

June 23, 1885, and directed to be filed on or before June 29, 1885, and which has been lost from the files of the court.

"Third. That all other papers, motions, and orders made or entered subsequent to the 21st day of July, A. D. 1885, the date of the filing of the answer to the supplemental bill in No. 2,023, be, and the same are hereby, stricken from the files and vacated, and that said cause stand upon the pleadings as they appear upon said 21st day of July, A. D. 1885."

This decree, as is permitted by the rules of the supreme court, contains no special finding, and therefore it, in form, adjudges the allegations of the bill in favor of the complainant, and, consequently, it, in form, adjudges that the respondents have been guilty of fraud as charged. We are advised by the opinion of the learned judge who sat in the circuit court that he found no fraud proven; that the complainant objected to any hearing on the bill and the answer filed on July 21st; that the court had no right to set the case down for a hearing unless on motion of the complainant, or with his assent; that the hearing took place under a mistake of all the parties; and that, therefore, under the circumstances, he decided to take the responsibility of allowing the case to be reheard, leaving his action to be reviewed by the appellate court. If this had appeared of record in the final decree or otherwise, it would have shown only that the court granted relief on the ground of a common mistake, and not on that of fraud.

The complainant (now the appellee) has filed in this court his brief furnished the circuit court on the hearing of the bill of review. This raised no point of the character found in the opinion referred to. The brief, after two preliminary sentences, opens thus: "The ground for this bill of review is based on alleged fraud practiced on the complainant, and also on errors of law apparent on the face of the case." No other propositions were submitted. On the other hand, at the hearing before us, the appellants assured us that in the circuit court no suggestion was made that relief was asked on the ground of mistake, and that that subject-matter was not in any way discussed or considered. Nothing in the record, or in any matter submitted to us on either side, indicates anything on the part of the respondents (now the appellants) waiving their right to have a determination based on the allegations of the bill. This right was, under the circumstances, of a substantial character, and could not have been held to have been waived except by some clear line of action leading to that result. Putnam v. Day, 22 Wall. 60, 66, 22 L. Ed. 764, says: "A decree has to be founded on the allegata, as well as probata, of the cause." This, as is well known, and for the best of reasons, is especially applicable to bills in equity charging fraud; and the rule is most strictly enforced under such circumstances. Daniell, Ch. Prac. (6th Am. Ed.) *382. A party who charges fraud assumes a grave responsibility by reason of making injurious allegations, which he cannot escape by substituting another issue in lieu thereof. The only exceptions have been in some instances where the bill had a double aspect, so that, therefore, it might be sustained according to its other allegations, even if those charging fraud were not proven. In such cases the proper practice is to expressly dismiss the bill so far as fraud is concerned. This is fully explained in Archbold v. Commissioners, 2 H. L. Cas. 440, 460. It is clear, for the reasons which we have stated, that there is nothing

in the record which would justify us in looking at any questions except those raised by the complainant in the circuit court; namely, that the bill of review is "based on alleged fraud practiced on the complainant, and also on errors of law apparent on the face of the case."

We may well add that this view of the pleadings and proofs relieves us from the necessity of carefully considering what powers courts can exercise for relief against mistakes, either by summary petitions or by formal bills of review.

The substantial questions presented to us are threefold, namely:

First. Whether the decree of December 13, 1900, now appealed from, is final, so as to be appealable;

Second. Whether that decree involves a matter of discretion of such a character that it is not appealable; and

Third. Whether, if we have jurisdiction, the merits of the case are with the appellants.

Coming to the first question, the bill now before us is one to file which, as already said, no leave of court was required. It is in fact a bill to impeach a prior decree for fraud, and therefore it is an original bill, although in the nature of a bill of review. Story, Eq. Pl. (10th Ed.) § 426; Adams, Eq. *419; Daniell, Ch. Prac. (6th Am. Ed.) *1584. Of course, a bill to impeach a decree, when brought against the party who committed the fraud, by a person who has no interest in maintaining any affirmative adjudication, may merely annul the decree if it succeeds, because one who has imposed on the court by fraud may have no further right in the same proceeding with reference to the same subject-matter. But, when the fraud has been practiced by a respondent, and the complainant has an interest to secure an affirmative decree, a different rule prevails; otherwise the complainant might be left in no better condition than if the decree stood. It is therefore said in Story, Eq. Pl. (10th Ed.) § 426, and Adams, Eq. *419, referring to this class of bills, that, where a decree has been obtained by fraud, the court will restore the parties to their former situation, whatever their rights may be. That is precisely the nature and effect of the decree now appealed from. The decree in the original cause was not merely set aside by it, but the parties were restored to their former situation in that cause. Therefore the frame of the decree appealed from, by necessity, terminated the litigation before us, so it was final in form, and in those respects it was correct. We have, then, an original bill, and a decree which terminates the litigation on that bill. It is difficult to see why, on principle, it is not appealable.

The supreme court has several times said that a bill of this nature will lie in a federal court to set aside a judgment or a decree fraudulently obtained in a state court, and vice versa. Marshall v. Holmes, 141 U. S. 589, 596, 12 Sup. Ct. 62, 35 L. Ed. 870; Robb v. Vos, 155 U. S. 13, 38, 15 Sup. Ct. 4, 39 L. Ed. 52; Bank v. Stevens, 169 U. S. 432, 463, 18 Sup. Ct. 403, 42 L. Ed. 807. A statement of the rule is found in Arrowsmith v. Gleason, 129 U. S. 86, 100, 9 Sup. Ct. 237, 32 L. Ed. 630, being there repeated from a prior opinion, as follows:

"The court of chancery is always open to hear complaints against it [that is, alleged fraud], whether committed in pais or in or by means of judicial proceedings. In such cases the court does not act as a court of review, nor

does it inquire into any irregularities or errors of proceeding in another court; but it will scrutinize the conduct of the parties, and, if it finds that they have been guilty of fraud in obtaining a judgment or decree, it will deprive them of the benefit of it, and of any inequitable advantage which they have derived under it."

The fact that proceedings of this nature are of such a character that they may be maintained in the federal court in which the original bill was decreed on, without reference to the citizenship of the parties or other jurisdictional questions, does not contravene our propositions. This is fully explained in Carey v. Railroad Co., 161 U. S. 115, 128, 131, 16 Sup. Ct. 537, 40 L. Ed. 638. The citations there made show that, although this proceeding may be ancillary for jurisdictional purposes, it is original and independent in the chancery sense.

Even if the bill in the proceeding appealed from had not been strictly original, and were only a bill of review, the decree, nevertheless, is, as we have shown, of such a character as to make it final. It leaves nothing further to be done in this cause. It reinstates the original suit on the pleadings as they appeared at the time of the hearing on bill and answer, and all other proceedings must be in that case.

Our attention has not been called to any decision of the supreme court directly in point on this question under the precise circumstances of this case. So far as we have found any, they have been with reference to appeals from decrees which were necessarily final by their inherent nature, either because they refused relief, or because they directed a reversal of the decree on the original bill, with such further directions as left no opportunity for further proceedings in the original cause. Bank v. Ritchie, 8 Pet. 128, 142, 8 L. Ed. 890; Whiting v. Bank, 13 Pet. 6, 16, 10 L. Ed. 33; Craig v. Smith, 100 U. S. 226, 230, 234, 25 L. Ed. 577; Clark v. Killian, 103 U. S. 766, 768, 26 L. Ed. 607; Ensminger v. Powers, 108 U. S. 292, 305, 2 Sup. Ct. 643, 27 L. Ed. 732; Osborne v. Town Co., 178 U. S. 22, 32, 20 Sup. Ct. 860, 44 L. Ed. 961. Others related to bills impeaching judgments at law. Nevertheless, in view of all the considerations which have come to our attention, we hold that the decree in the present case was final for the purpose of an appeal.

Coming to the second question, it is said that review lies in the discretion of the court of primary jurisdiction, and that, therefore, this decree is not appealable. There are two kinds of discretion,—one absolute, as in granting or refusing continuances, from which there is no appeal; and one of a judicial character, which properly affords the basis of revision by an appellate tribunal. With reference to bills of review which are filed, not as of right, but only on application to the court of primary jurisdiction, granted or not, according to its sound discretion, an appeal does not lie from the granting or refusal of the application; but when, afterwards, a bill of review has been filed, and proceedings in regular course have followed the bill, such proceedings become a matter of strict right. They are analogous to proceedings after a new trial has been granted. No authoritative statement can be found to the contrary. There are some occasional inapt expressions, but they arise from not clearly stating the circumstances, or the distinction between a petition for leave to

file a bill and the proceedings thereafter. Adams, Eq. *417, merely states that, "Where a bill of review is founded on the occurrence or discovery of new matter, the leave of the court must be first obtained." This refers only to what precedes the filing of the bill. What Story, Eq. Pl. (10th Ed.) says on this topic in section 417, is, of course, limited by section 412, to the effect that leave of the court must be obtained before a bill of review can be filed on the ground of newly discovered matter. The court, in Rubber Co. v. Goodyear, 9 Wall. 805, 806. 19 L. Ed. 828, was speaking of an application made to itself for leave to file a bill of review below. This concerned that class of cases in which it has been held that, after a mandate has gone down, the court below cannot entertain a bill of review without the consent of the appellate tribunal,—a rule which was fully expounded by us in Re Gamewell Fire Alarm Tel. Co., 20 C. C. A. 111, 73 Fed. 908. Therefore, even if the present case were one of a bill of review, properly speaking, of the class to which the leave of the court must be obtained before one can be filed, the exercise of unappealable discretionary powers would end with the granting of the application therefor. But we have here, as we have shown, an independent and original bill, asking independent and original relief, which might have been filed as a matter of right, and as to which no mere discretion is exercised at any stage.

While neither Bronson v. Schulten, 104 U. S. 410, 26 L. Ed. 797, nor Phillips v. Negley, 117 U. S. 665, 6 Sup. Ct. 901, 29 L. Ed. 1013, relates to the setting aside of a decree in equity, yet they are so closely analogous to the case at bar on the question of finality, and also on the question whether the action of the circuit court was so far within its mere discretion as to be unappealable, that the principles which they recognize seem quite conclusive in favor of the results which we have reached. In Bronson v. Schulten the action of the circuit court vacating a judgment entered at a former term was reversed, and that court was directed to restore it. Phillips v. Negley, however, is so much fuller on both propositions involved that it does not seem necessary to dwell on Bronson v. Schulten, except to say that it pointedly called attention to the fact that any peculiar practice of state courts is not to be considered. Phillips v. Negley will be better understood by examining the facts as stated in the same case, 2 Mackey, 236, and the opinion of the court there reported. The special term of the supreme court of the District of Columbia, after a vacation following the entry of a judgment against the defendant Negley, set it aside, as appears in 117 U. S. 668, 6 Sup. Ct. 902, 29 L. Ed. 1013, "because of irregularity, surprise, fraud, and deceit." The record also shows that Negley had had no hearing on the merits. At the general term, according to the opinion in 2 Mackey, 236, an appeal was dismissed on the ground that the opening of the judgment was not a finality, and was a matter of mere discretion, thus involving the two principal questions we have already considered, although at law, instead of in equity. These facts are well stated by Mr. Justice Matthews in 117 U. S. 671, 6 Sup. Ct. 901, 29 L. Ed. 1013. The United States supreme court, however, held that the action of the special term was appealable, and that what it did in

setting aside the judgment was void, suggesting, however, at pages 678, 679, 117 U. S., and page 907, 6 Sup. Ct., 29 L. Ed. 1013, that Negley had, perhaps, a remedy by a bill of the class now before us. The result was that it reversed the proceedings of the supreme court of the District of Columbia, and remanded the cause, with directions to dismiss the motion of the defendant to reopen the judgment.

Coming now to the third question,—that is, the merits of the case, —we have already shown that the gravamen of the present bill is alleged fraud on the part of the present appellants. As we have also already shown, the only grounds of relief which were set up in the circuit court, and which can be within the four corners of the bill of review, are fraud and errors in law arising on the face of the record in the original cause. It is impossible to combine both matters in one bill, because a bill to set aside a decree for fraud is, as we have shown, an independent, original suit, and may be brought in some other court than that in which the decree was entered, while a bill of review for errors in law can lie only in the same court. Moreover, inasmuch as the bill now before us does not show that the complainant made any movement towards rectifying the decree for more than nine years, and sets up no excuse for the delay, it is plain that, independently of the rule that a bill of review for errors of law on the face of the record must be brought within the time within which an appeal will lie, the general doctrine of laches offers a perfect defense. It is plain, moreover, that, notwithstanding there were some allegations which might, under other circumstances, be appropriate for a bill of review for errors of law, they are here only incidental to the gravamen of the bill, which, we have already shown, is limited to alleged fraud.

It is not necessary for us to advert in detail to the well-settled rule that allegations of fraud in a bill in equity, positively denied in the answer, as is the record here, cannot be sustained on the uncorroborated testimony of a single witness,—which, at the most, is all we have here,—nor to bear on the fact that here that single witness is the complainant, and that his testimony lacks the details essential in proofs of that class. Moreover, we find, under date of June 23, 1885, the following: "Ordered that the defendants bring their account down to May 22, 1885, the date of the filing of additional interrogatories, the additional account to be filed on or before Monday, the 29th instant." This clearly related to the bill in its aspect as a bill of discovery, although the same day the "supplemental" or amended bill was filed. As already said, the docket entries show that on July 21st, the respondents filed an answer to the amended bill. The answer which the complainant claims was fraudulently withdrawn he alleges was filed on June 29th. There is enough in the docket entries to make it plain that that answer, if it was ever filed, had no relation to the amended bill. It appears that while the original bill remained simply a bill of discovery, on May 11, 1885, the respondents filed an answer thereto. Afterwards, on June 3d, the complainant moved for attachment for contempt against some of the respondents for not answering fully. Then, on June 23d, we find the order already cited. This merely directed an additional account to be filed on or

before the 29th. At that time no answer was due to the bill amended to become a bill of relief, and the presumption is inevitable that whatever was filed on the 29th, if anything, was simply the account ordered by the court to be filed on or before that date. On March 24, 1887, the respondents in the original cause produced therein a copy of the paper of June 29th, and accompanied the same with a motion for leave to file it, and an affidavit of their counsel in reference thereto. On March 31, 1888, the court made an order allowing the motion. The court, in granting leave to file this copy, authenticated it as true; and no action has been taken on the part of the complainant to qualify that authentication. Therefore the first step for the complainant in sustaining his bill of review, in that it alleges that the answer of July 21st was fraudulently interposed for the alleged answer of June 29th, was to have brought before the court the copy of the latter, so that the court could perceive its nature, or else to have challenged its authenticity. As the record stands, we are forced to the conclusion that the alleged answer of June 29th was of the character which we have stated, and that it could not have been of any consequence on the hearing which occurred in the original cause, or with reference to the final decree entered thereon. There was no motive whatever to induce its suppression as alleged in the present bill.

While thus the very foundation on which a superstructure of fraud could be erected is taken away, nevertheless, without referring to the record further than we have already done so, we ought to repeat that there is an entire failure to prove by suitable evidence any charge of fraud, connivance, or misconduct of any kind on the part of the appellants, or of any one else, and that no proper basis for any suspicion of that character is left.

It is not uncommon for the supreme court, where the record indicates merits, but the court below has departed from the pleadings or proofs, to reverse the decree, and remand it, with leave to amend the pleadings, or supplement the proofs, as the circumstances may be. There is no necessary difficulty, arising from the mere matter of form, to prevent a bill from being regarded as a summary petition, provided the substantial allegations are present. The parties having been fully heard on the merits, we treated a cross bill as an intervening petition in Gregory v. Pike, 15 C. C. A. 33, 67 Fed. 837, 846. But, in any view, whether relating to the bill now before us as framed, or whether to it as made by the circuit court, no case can be found emanating from the federal courts which can overcome the defense of laches. Whatever may have been the condition of the complainant's knowledge before the copy of the answer of June 29th was ordered to be filed on March 31, 1888, he then knew every detail which he knows at the present time. The bill alleges no excuse whatever for his delay, except the pretense of an attempt to reopen the case by a paper filed on March 25, 1887, to which we will refer further hereafter. Under these circumstances laches is an absolute bar. The principle is so well settled that it seems hardly necessary to refer to authorities, but we will cite Hardt v. Heidweyer, 152 U. S. 547, 14 Sup. Ct. 671, 38 L. Ed. 548, both as to what lapse of time, when not excused, operates in equity absolutely as laches, and what

allegations the bill or petition must contain to lay the basis of excuse. The decision also shows that the defense of laches is so absolute that it may be taken on demurrer; and, indeed, it is well known that, even without a demurrer, or without any matters appearing in the answer, the court sometimes raises the defense of its own motion. The various expressions found in the decisions of the supreme court with reference to the sound discretion of the court, or special circumstances, refer to the sound discretion of the court in which the case is pending, whether the court of the first instance or the appellate tribunal, and to peculiar circumstances which may either abbreviate or extend the delay in consequence of which the defense of laches becomes operative. A collection of various instances will be found in Galliher v. Cadwell, 145 U. S. 368, 372, 373, 12 Sup. Ct. 873, 36 L. Ed. 738, where, according to the circumstances, delays for so short periods as twenty months, two years, four years, and, the longest there named, five years, operated as a bar. It will be impossible for us to sustain a decree on the bill before us on any theory whatever without violating the law with reference to laches as laid down by the supreme court on many occasions and as supported by well-established equitable rules.

The appellee has called the attention of the court to the fact that on March 25, 1887,—which was the day after the motion for leave to file the copy of the alleged answer of June 29th was made,—he, as complainant in the original cause, filed a petition for leave to file a supplemental bill, which was never considered by the court, and which, as he alleges, was never entered on the docket. He brings to our attention a copy of that petition, which states that its object was to obtain the discovery ordered on June, 22, 1885, and also to obtain the answer which he alleges was filed on June 29th. If this effort had been diligently followed up, and had been brought to a close within a reasonable period before the bill now before us was filed, even though it had resulted adversely to the complainant, it might, in accordance with many precedents, have bridged the long intervening period, and avoided any defense of laches; but now answers are numerous. It does not appear that the petition was ever brought to the attention of the court. The substance of all which could possibly have been obtained by it was obtained by the order allowing the filing of the copy of the answer of June 29th; and, if there had been any loss of any right so far as the petitioner was concerned, or any irregularity through the alleged omission to docket the petition or to act on it, the lapse of time gives to all this the same conclusive answer which it gives to all the other propositions which we have considered.

Some other minor matters have been called to our attention, but they are not of sufficient importance, in any view of them, to weigh against the great preponderance of the case as we have explained it, and any reference to them would merely prolong this discussion without avail.

The appellants did not obtain a supersedeas of proceedings in the circuit court subsequent to the decree now appealed from and pursuant thereto. Also it is apparent from what we have already stated

that neither party can be properly charged with all the conditions which required this appeal. Therefore it is plain that neither party should bear the entire costs, and it seems impracticable to apportion them correctly on any satisfactory theory, or even to determine satisfactorily that they should be apportioned.

The decree of the circuit court is reversed, and the case is remanded to that court, with directions to dismiss the bill, with the costs of the circuit court for the respondents therein, and to take such further proceedings as may be necessary to restore the final decree entered in the original cause on the 31st day of March, 1888, without any costs for either party in said original cause except as provided by said decree of said 31st day of March, and neither party will recover any costs of appeal.

ALDRICH, District Judge (dissenting). I am under a strong conviction that the decree of the circuit court vacating its own earlier decree upon the ground of mistake should be affirmed, and the gravity of the question and the importance of the principle involved require that the reasons for my dissent should be stated at considerable length. The question is whether a party shall lose his right of trial and his day in court upon the merits through a mistake of the court in considering and dismissing his bill upon a paper not submitted, and one upon which the party has never been heard either as to its form or substance. I can conceive of no more important question than this. It at once goes to the fundamental right of trial. No truth is more essential to the usefulness and the security of the judicial system than that all parties shall have a full, regular, and fair trial. It is hardly less essential that judicial proceedings shall be so ordered that all parties shall feel that they have had their day in court, and that they have had a fair trial.

The court below has found that the decree dismissing the bill resulted from a mistake of fact,—that of considering an answer filed after submission upon bill and answer,—and that the mistake was one for which the court was, to a certain extent, responsible. This finding, with the same parties before him, relates to an earlier decree of the same judge in the same court, with the position of the parties substantially the same as when the earlier decree was entered. It is also found that the mistake was not discovered until the hearing in which the finding was made, and that the mistake is one which the court should endeavor, if possible, to correct.

At the outset I venture to say that no case can be found in this country or in England where the discretion of a chancellor, exercised to relieve the parties and his own conscience from the consequences of his own mistake in dismissing a bill upon misapprehension as to the state of the pleading, has been overruled by an appellate tribunal, and the chancellor compelled to execute a decree which, upon a subsequent hearing, with the parties all before him, and with the situation unchanged, and no third-party interests intervening, he has found as a matter of fact was based upon a mistake of fact, preliminary to the merits, which deprived the party of his day in court. If it is done in this case, it will be the first instance in the history of equity jurisprudence.

It is not seriously contended in argument or in the majority opinion that the mistake was not made substantially as found by the circuit court; and the majority opinion proceeds upon the idea,—First, that relief cannot be granted, because the petitioner proceeded in his application for relief upon allegations of fraud, rather than mistake; and, second, that his right to relief was lost through laches or lapse of time. I cannot but feel, therefore, that the reasoning resorted to to uphold the mistaken and wrong decree is extremely technical as applied to a situation like the one in question; and this is so because a course of reasoning, which has been the outgrowth of public policy and the necessity of upholding decrees and orders based upon hearings upon the merits, is invoked by the majority opinion to fortify and hold fast to a decree not based upon the merits, but upon a mistake, which side-tracked the merits, and deprived the plaintiff of a hearing.

I maintain that the order of the circuit court setting aside the mistaken and unwitting decree of dismissal was required—First, upon general grounds of equity; and, second, because, as a result of the mistake, the plaintiff was denied the due process of law guarantied to suitors by amendment 5 of the federal constitution.

While it is somewhat unusual to vacate decrees after enrollment, it is not by any means unheard of, and the power to do so upon proper proceedings in respect to unauthorized decrees and those based upon mistakes not relating to the merits, but preliminary thereto, when justice requires it, is unquestioned. Phillips v. Negley, 117 U. S. 665, 674, 6 Sup. Ct. 901, 29 L. Ed. 1013; Freem. Judgm. § 100, and cases in note 1; Black, Judgm. § 301; Seton, Decrees Ch. 787; 2 Daniell, Ch. Pl. & Prac. (6th Ed.) §§ 1026, 1027, and cases. See, also, cases in 17 Am. & Eng. Enc. Law (2d Ed.) p. 837, note 5, subd. "o."

It is undoubtedly a general rule that no deliberate decision should be reversed by the same court where reversal would do injustice, or unduly disturb rights of property; and it is equally axiomatic that, if a decision is clearly incorrect, and no injurious results will be likely to follow from a reversal, and especially if the decision is injurious and unjust in its operation, it is the imperative duty of the court to reverse it. In a case like this an arbitrary rule which would deny to courts the power, or absolve them from the duty, of relieving from their own mistakes in deciding cases upon wrong papers or the wrong record, would be discreditable to the administration of justice. Such a hard and fast rule would be contrary to the spirit of the law and contrary to equity. It would at once violate the plain teachings of simple justice. It would compel a chancellor to hold fast to a right which he had established upon a clear mistake. Of course, a court should and would stand to its decree based upon an adjudication of the facts and of the law; and probably no one would contend that, after the end of the term or the lapse of the statutory time for appeal, it would enter upon a review of the merits, and upon ground of error disturb its rulings of law or findings of fact; but neither conceding nor maintaining this rule of stare decisis touches the question of a decree which is wholly based upon a mistake as to

jurisdiction, or upon a mistake preliminary to the merits, like the one presented here. The first would be the review of the judgment of the chancellor; the second would be the correction of a pure mistake. Every regularly constituted court has and must have inherent power to do all things that are reasonable and necessary for the administration of justice within the scope of its jurisdiction. Holding fast to a decree based upon a mistake of the court preliminary to the merits is not administering justice. On the contrary, it is administering a mistake,—administering a wrong; still worse, administering the mistake and the unwitting wrong of the court.

The general rule that relief from decrees and judgments will not be granted upon motion after the term has no application here. This is a proceeding whereby all the parties are again brought before the court, and under circumstances in which jurisdiction both over the parties and the subject-matter again obtains. The court therefore has full and complete power to do what ought to be done.

There is no general rule that should govern this case. The petitioner has never had a trial, and he is entitled to one. He never submitted the case upon the answer. He has never been heard upon any question as to its form, substance, or effect. That he has not had a hearing is due in part, as found, to a mistake of the court, and the nature of that mistake was never discovered until the hearing in which the finding was made. But, without regard to when it was discovered, I should maintain that the court, in the presence of the parties, had the inherent power of correcting the mistake. The right of a court to correct a mistake of this character must be an inherent right. I cannot devest myself of the opinion that there is a wide difference between the idea of disestablishing a right settled by a decree upon hearing and the disestablishment of a decretal right created by the court through dismissing a bill before hearing upon mistake. In the first instance the right is established upon a regular proceeding, and in accordance with the constitution and the laws; while in the other the right is established upon a mistake,—an irregularity,—and a consequent denial of the right of a hearing.

The relief sought herein is not a review of the case upon the merits as to either law or fact, for the reason that the merits of the plaintiff's case, as presented by his original bill, have never had a first-instance consideration or decision as to either law or fact. The vacated decree was not based upon a decision upon evidence or upon the merits of the bill, but upon the allegations of a distinct and different answer, filed after submission upon bill and answer, and by reason of the rule of law that in a case submitted upon bill and answer the allegations of the answer are, for purposes of decision, to be accepted as the facts of the case, and the relief sought is, in effect, only a review of the order of dismissal; and the ground of relief is that the court, by mistake, dismissed the bill upon the merits of an answer not submitted, and not before it. So this proceeding, although somewhat in the form of a bill of review, is, in substance, not one in the sense in which such a bill is understood to be maintained,—as, for instance, to correct mistakes of law apparent on the record, or for a review of the merits upon the ground of mistake

or newly discovered evidence,—but is, in effect and substance, and should be treated upon the situation presented by the findings of the circuit court simply as, a petition or summary proceeding for relief from an inadvertence or mistake in dismissing a bill upon the facts stated in an answer supposed to be before the court, when in fact the allegations of the answer were neither admitted nor before the court for consideration under the submission.

The questions presented by this record should be approached with the idea that it is contrary to principles of natural justice that one party should be benefited or that another party should suffer by a decree based upon inadvertence, accident, or mistake; for, as said by Chief Justice Marshall in an early case, "It is against conscience that one should enjoy such a benefit or that another should suffer such a wrong." If we sustain the circuit court, we establish no property right, but we give to the complainant what he has never had,—a trial and a consideration of his case upon the merits, or a hearing upon the bill and answer as they stood when the case was submitted on bill and answer, where both parties can be heard. But, on the contrary, as a record showing a dismissal of a bill, upon bill and answer, operates as a bar to subsequent suits in respect to the same subject-matter, if we reverse the circuit court we establish a property right, and do an injustice by compelling that court, against its conscience, to hold to a decision dismissing a bill which that court finds, as a matter of fact, was ordered under a mistake of fact, not as to the merits of the case as to either law or fact, but as to the state of the pleadings before it.

In my view, we may disregard the question whether the complainant is entitled to relief upon a strict bill of review as such, and we may and ought to treat his bill as within that class of rare occurrence which is referred to by Lube, by Mitford, by Story, and by other authors on equity procedure, as embracing petitions, supplemental bills, and bills in the nature of a bill of review, and which are not subject to all the limitations as to scope and time incident to a bill of review proper, and which may be invoked in the same cause between the same parties for the purpose of suspending or avoiding a former decree, and because, a case having been concluded by such a decree, it is necessary to bring the parties again before the court upon an original petition or bill; and I am under a strong conviction that the relief sought ought to be afforded, not upon the ground of fraud, for that is not shown, but upon the ground of accident or mistake, which is found as a fact, and stated by the learned circuit judge in the court below as a reason for his action in vacating the original decree; and, if necessary for such relief, that leave should be granted to reframe the petition to the end that relief may be afforded upon the ground of mistake in accordance with the view of the circuit court as shown by the findings and the opinion therein. But I shall refer to this feature of the case at the conclusion of my dissent.

The difficulties of the situation presented here should not be magnified by confounding this case with authorities based upon situations where there was a hearing upon the merits and a final decree,

and where the parties had departed from the court with their rights established and unchallenged, and where, through lapse of time, public interests and the interests of third parties had intervened. This decree, at the most, was a decree precipitated by a technical rule as to the effect of a submission upon bill and answer, and it now turns out that the application of the rule was under a mistake and misapprehension of fact in respect to the submission; neither the court nor the parties understanding correctly under what answer the cause was submitted. In other words, the court and the parties were laboring under a mistake of fact as to the state of the pleadings.

The cause remained upon the docket from October, 1885, when the order that the bill be dismissed was entered, until October, 1887, when the decree thereon now under consideration was entered. The docket entries show that the complainant resorted to a petition for rehearing within 12 days from the order dismissing the bill, and that he constantly sought relief by motions and petitions from that time forward to 1887, from what he alleged was an unjust and mistaken result.

While, as a general rule, the law as administered by courts is careful to protect rights which vest in reliance upon judicial decrees, if there is no change in the situation, and no actual vesting of rights of third parties, the law naturally inclines to the idea of relieving from mistake and accident and to the idea of correcting that which is wrong. In this case the technical final decree—technical in the sense of not being based upon a hearing on the merits—beyond question had its foundation in mistake and misapprehension; and I cannot bring myself to a concurrence in the view that, in a case where no third party rights are in question, where no question of public justice is involved, where the same parties, with no change in the situation, are before the same court and the same judge, that the court is without the power to correct a decree to which it was led through an error or mistake of fact as to the state of the pleadings, and a mistake which it distinctly finds produced an unauthorized, mistaken, and inadvertent result. Such power must exist as an inherent, necessary, and wholesome function of a tribunal established to administer law, not upon the basis of mistakes and accidents, but upon principles of equity and justice.

The learned judge, in vacating the decree, finds that the hearing took place under a mistake of all parties,—the counsel for the complainant, because he supposed the case had been set down for hearing upon the bill and answer as they stood on June 29th, and under a mistake of the court and of the counsel for the defendant in setting the case down for hearing upon the bill and answer of July 21st,—with the result, as the learned judge proceeds to say, "that the complainant has not been allowed to make out his case," and that "there has been no hearing upon the merits." The circuit court frankly says:

"There was a mistake of fact, for which I think the parties, the counsel, and the court were all to a certain extent responsible. The court undertook to render a decision and enter a decree on the bill and answer filed on July 21st, which was a wrong proceeding on its part. * * * The complainant

objected to any hearing upon this bill and answer, and the court had no right to set the case down for hearing unless upon motion of the complainant, or with his assent."

Notwithstanding the term was passed, and notwithstanding the fact that time had elapsed, I maintain that it is plain that, the circuit court having the same parties before it, with the position of the parties substantially the same as when the final decree was entered, as is found by the learned judge below, and there being, as said by the circuit court, clear error (meaning the mistake) which was not discovered until that time (the time of vacating the decree), the court had power, in the exercise of its discretion, to relieve from the unjust and wrong decree resulting from a mistake which the court had the courage to declare it was in part responsible for, and which, as he says, "the court should endeavor, if possible, to correct."

I do not question the general proposition that, where the situation of the parties has materially changed, or where third party interests have intervened, considerations of public policy may compel a wrong and mistaken decree to stand; but such views are wholly excluded from the present situation, because here the parties and their conditions are the same. And thus the question presented is whether, under such circumstances, a decree based upon accident and mistake, which the judge making it says resulted from accident and mistake, and which the record demonstrates was the result of mistake, shall stand as an impregnable barrier, or whether it shall yield to plain and palpable considerations of justice.

It is not necessary to maintain that the order vacating the decree is altogether one resting in discretion in the sense that it was not appealable; but I do maintain that in respect to the merits, and in respect to the time in which relief was sought, the order so far rests in discretion that it should not be disturbed, if, as said in the Michigan case,—Stockley v. Stockley, 93 Mich. 307, 53 N. W. 523 (see, also, 3 Enc. Pl. & Prac. p. 585, par. 2, note 2, and Id., p. 588, and cases cited in note),—it effectuates substantial justice, and protects the legal and equitable rights of the parties. The supreme court has repeatedly and expressly refrained from deciding such questions in respect to orders as to judgments appealable, and from disturbing action of the circuit courts in the exercise of discretion. See cases collected 3 Enc. Pl. & Prac. 589, in note on appeals.

While the weight of authorities seems to hold that a bill of review, strictly speaking, which does not constitute a part of the original cause, should be brought within the time in which the case could be appealed, or in which a writ of error would lie, there is no absolute time rule in respect to bills which are incident to and a part of the original cause and of the class of which I have spoken, and it is for the reason that they are incident to and become a part of the original cause. Such proceedings are, in nature and substance, like a petition in the same cause between the same parties, to right that which is wrong.

I think the facts stated in Judge Colt's opinion should be treated as conclusive, because he says, "under the facts as I find them," etc. But, entirely independent of this, the record shows clearly enough

what the mistake was. There was an answer filed on June 29th, and on that answer the cause was set down for hearing on bill and answer. Later, on July 21st, another answer was filed, but, as the court now finds, the case was not set down for hearing thereon; yet the court, under misapprehension, dismissed the bill upon the answer upon which the case had not been submitted. So it follows, in fact, that the bill was dismissed upon a record which was not before the court through mistake of fact in considering a record not before it, rather than the record which the previous submission called for. There is some confusion upon the record as to what the lost answer of June 29th contained, but that is really of no consequence, except as showing how the mistake happened. It was not what the answer of June 29th did or did not contain that wrought the injury to the petitioner. It is quite sufficient to say that his bill was overthrown and his case dismissed by reason of the allegations of fact contained in the answer of July 21st. The case had not been submitted on such answer, and the harm resulted from its being considered against his protest, and without his knowledge.

I do not propose to enter upon any elaborate discussion of the numerous authorities, which are somewhat confused as to the scope of the strict writ of review. I do not enter upon such discussion for the reason, as it seems to me, that under a bill in the nature of a petition, which is sometimes designated as a supplemental bill, sometimes as a bill in the nature of a bill of review, and sometimes as a petition, but which is in fact an incident of the original cause, though issuing as an independent or original proceeding for the purpose of getting the parties before the court, a court not only has unquestion·able power, but is under the imperative duty, not by arbitrary methods, not ex parte, and not in violation of vested rights or principles of justice, but when face to face with the parties interested in the controversy, with the conditions unchanged, to correct its orders and decrees which are founded either in accident, mistake, or fraud.

The right of the party holding this decree was not an inherent or natural right. The right was founded upon the action of the court, and, with the parties before it, the court subsequently discovered that its action was under misapprehension and mistake; that its action was taken and its decree made upon a record not submitted. Vacating this decree, therefore, did not involve the destruction of an inherent and absolute right. The vacating order only means that one shall not hold by virtue of a decree of a court that which has been accorded to him through accident and mistake; and, as already said, the effect is only to send the parties to a hearing upon the merits, where justice can be done, and, if the defendants have a case, their rights will be accorded to them.

It would be a startling proposition that a judge, who, in handing down memorandums in two cases, misplaces them by inadvertence or mishap, thereby, contrary to his purpose, dismissing a cause which he intended to hold, and holding one which he intended to dismiss, has no power, after the end of the term or at any time, upon proper proceedings, with all the parties before him, and no third party interests intervening, to undo the wrong resulting from such a mistake,

and thereby to prevent a miscarriage of justice. I think the case of U. S. v. Williams (in the Eighth circuit) 14 C. C. A. 440, 67 Fed. 384, entirely correct in principle, and entirely consistent with the English and American authorities, so far as it deals with the inherent and necessary power of the court to correct its own mistakes. Whether, in view of the supreme court authorities to the effect that the enrollment of the decree is presumed to have been made at the close of the term, it should be done on summary motion, rather than by resorting to an original bill in the nature of a bill of review or a summary petition, it is unnecessary to say, because the case before us is not upon motion, but upon petition for relief; and, although proceeding upon the idea of fraud, we may treat it as a case for relief, as the circuit court wisely did, upon the ground of mishap, mistake, or irregularity. To me it seems perfectly plain that this complainant should have relief from the decree dismissing his bill, which, though final in name, is technical in substance, in the sense that there never was a hearing upon the merits.

Setting a case down for hearing upon bill and answer is an admission of the facts set out therein, and, as has been said, by inadvertence or mishap, under this entry, the case was made to turn upon an answer filed subsequent to the submission. The court therefore turned the case against the complainant upon an admission which he never made. The circuit judge so finds, and the record sustains the finding. At all events, there is nothing in the record to justify this court in interfering with the discretion involved in the finding of such fact by the judge who made the finding and vacated the decree.

This case simply presents a mistake in dismissing a bill preliminary to the merits. That this party should either have a decision of his case upon the record as it stood when the cause was submitted upon bill and answer, or an opportunity to try his case upon the merits, is the plain demand of simple justice. He has never had either, and, if he fails to get one or the other, he is denied a plain and sacred fundamental right. That the mistake of a judge in dismissing a bill upon a wrong record becomes so impregnable and unalterable as to work such a dire result, I cannot agree. To me it is inconceivable that a judge with all the parties before him is unalterably bound by an order dismissing a case which is made under misapprehension and upon a wrong record,—by an order made through mistake of considering facts as admitted which were not even submitted. That the complainant did not get a hearing upon the record actually submitted was the result of accident or mistake, as the circuit court has found, and the defendant therefore manifestly got what he was not entitled to,—an order of dismissal upon an answer filed subsequent to the entry of hearing on bill and answer.

Courts should never strain a technical rule for the purpose of sustaining a technical advantage at the expense of substance and to the exclusion of the merits of a case. As a general rule, a final decree is conclusive, and establishes the right; but within reasonable rules, and with the parties before the court, the right is subject to being disestablished upon grounds of mistake, accident, or fraud. The right is not fixed and unalterable in the sense that it shall stand though

based upon accident or fraud. The right to hold the decree was at once challenged, and the complainant contended for relief time and again, and finally yielded to the second (or, rather, the third) decision of the circuit court against him; and, failing to get what it has subsequently been found he was entitled to, he yielded for a time; and the mistake being the mistake of the court, and the injustice resulting from such a mishap, and the decree having been challenged over and over again without relief, his inaction between the decision on rehearing and the final application in this proceeding should be treated as involuntary, like yielding to process regular upon its face, or to an unconstitutional law.

The Lord Bacon act has never been accepted in this country or in England as taking from the courts the inherent power of correcting mistakes in accordance with the plain demands of justice. As has been said, the bill was dismissed, as the circuit court finds, upon facts and upon a record not submitted. The character of the mistake is found as a matter of fact by the circuit court, and that court says the decree is based upon a wrong decision, and one from which relief should be given. I agree with this view entirely, and think it is quite plain that it is so.

There is a wide difference and a marked distinction between a case like this, where there never has been a hearing on the merits, and cases where the decree is based upon a full hearing. As pointed out by Mr. Black, in his work on Judgments and the Doctrine of Res Judicata, at section 301 (and see note 42):

"The rule that a decree once enrolled cannot be opened except by a bill of review or by an original bill for fraud is subject to well-founded exceptions arising in cases not heard upon the merits, and in which it is alleged that the decree was entered by mistake or surprise, or under such circumstances as shall satisfy the court, in the exercise of a sound discretion, that the decree ought to be set aside."

Mr. Freeman, in his treatise on Judgments (section 100, and see cases in note 1), recognizes the same doctrine as one necessary to the administration of justice, and says:

"Accordingly it is laid down by the most eminent elementary writers, and fully sustained by the adjudged cases, that when a case has not been heard on the merits the court will, good cause being shown, exercise a discretionary power of vacating an enrollment and giving the party an opportunity of having his case discussed. The fact that the merits of the case were never before the court seems to be the controlling one in all applications for the exercise of this discretionary power. Therefore, where the decree is perfectly regular, so far as regards the appearance of the parties, and is in conformity with the general practice, it may be vacated, at the discretion of the court, upon a showing of mistake, accident, or surprise, or of negligence of the solicitor, by which a decision on the merits was prevented."

The same idea is forcibly expressed by Mr. Whitehouse in his work on Equity Practice, at section 259, and see note.

I do not propose to go over the numerous English and American authorities which agree as to the power of the court to relieve from its decrees based upon accident or fraud. The point of departure between the state authorities and the decisions of the supreme court only relates to the time and mode of the application for relief. In

many of the states the time and manner are regulated by statute, but in the federal courts, in the absence of statutory provisions, each case must be governed by its own circumstances; and the supreme court, while adopting the rule that motions to vacate must be made within the term, and the general rule that a bill of review strictly as such must be made within the time in which a writ of error or an appeal could be taken, has repeatedly recognized the broader view, which permits of relief at a later period upon petitions, supplemental bills, and bills in the nature of bills of review, and that each case must be governed by its own circumstances.

The recent case of Blythe Co. v. Hinckley (C. C. A.) 111 Fed. 827, enunciates no new rule. It is merely a reiteration of the old and familiar rule that bills of review ordinarily must be filed within the time limited by statute for taking an appeal, where the review is not sought on matter discovered since the decree. The case at bar is even stronger than a case founded on evidence discovered since the decree, for here the discovery is of a mistake which led the court unwittingly to disregard all evidence and forego all decision except such as related to an answer not before it.

The strong expressions of the supreme court in support of the doctrine of stare decisis and of the idea of the inviolability of final decrees have almost always been qualified, as in Phillips v. Negley, 117 U. S. 665, 674, 6 Sup. Ct. 901, 29 L. Ed. 1013, by an exception or saving clause in respect to the power of the court to correct clerical mistakes, to reinstate a cause dismissed by mistake, and that class of cases where relief is granted upon principles of equity, and such as are covered by writs of error coram vobis at law.

In U. S. v. McKnight, 1 Cranch, C. C. 84, Fed. Cas. No. 15,695, the court at a subsequent term set aside a judgment entered by mistake. In The Palmyra, 12 Wheat. 1, 10, 6 L. Ed. 531, Mr. Justice Story observed that:

"Every court must be presumed to exercise those powers belonging to it which are necessary for the promotion of public justice; and we do not doubt that this court possesses the power to reinstate any cause dismissed by mistake. The reinstatement of the cause was founded, in the opinion of this court, upon the plain principles of justice, and is according to the known practice of other judicial tribunals in like cases."

In Sibbald v. U. S., 12 Pet. 488, 492, 9 L. Ed. 1167, the court, in stating the general rule that courts cannot reverse final decrees for errors of fact or law after the term in which they have been rendered, expressly qualify it by saying, "Unless for clerical mistakes, or to reinstate a cause dismissed by mistake." So in City of Elizabeth v. Nicholson Pavement Co., 24 L. Ed. 1059, the supreme court, through Mr. Justice Bradley, said, "We have no doubt of our power at any time to amend a decree which has, by inadvertence or mistake, been entered in a different form from that in which we intended it." In Insurance Co. v. Boon, 95 U. S. 117, 125, 24 L. Ed. 395, the supreme court observed that, "whatever may have been the rule announced in some of the old cases, the modern doctrine is that some orders and amendments may be made at a subsequent term, and directed to be entered and become of record as of a former term," and quotes

approvingly from a Pennsylvania case that "the old notion that the record remains in the breast of the court only till the end of the term has yielded to necessity, convenience, and common sense."

It must be distinctly borne in mind that we are not dealing here with the power of the court to review its mistakes as to a decision of facts relating to the merits, or in respect to mistakes of law relating to the merits, but only with the inadvertence or mistake of a judge in dismissing a case upon the probative force of an answer not submitted to it; in other words, inadvertently dismissing a bill upon the wrong answer. It is inconceivable that the court may relieve from the mistake of a clerk in filing a wrong paper or wrong order, and still be without power to relieve from its own mistake in taking up, considering and dismissing a case upon a wrong paper, or a record not submitted.

If the power of the court, upon process, to recall the parties, and correct its mistakes, exists,—as I maintain it does,—the question of the time in which it may be done becomes a matter of discretion, and should be decided like questions of kindred character; and a finding of the court of first instance should not be disturbed unless it clearly appears that injustice is being done.

Control of the court of first instance over its judgments and decrees in respect to questions of fraud, accident, and mistake, and relief therefrom on such grounds, was considered as so entirely a matter of discretion, to be determined by that court upon the circumstances of the particular case, that it was distinctly held by the supreme court in Brockett v. Brockett, 2 How. 238, 240, 11 L. Ed. 251, as well as in Connor v. Peugh's Lessee, 18 How. 394, 15 L. Ed. 432, that, a motion to set aside a judgment being directed to the sound discretion of the court, no appeal lies from its decision. In the later case of Ricker v. Powell, 100 U. S. 104, 107, 25 L. Ed. 527, it is said: "Without intending to decide that an appeal will lie to this court from an order of the circuit court refusing leave to file a bill of review." Again: "For a bill of review on the ground of newly discovered matter can only be filed on special leave, which depends on the sound discretion of the court to which the application is made." Again, in Nickle v. Stuart, 111 U. S. 776, 4 Sup. Ct. 700, 28 L. Ed. 599: "Without intending to decide that an appeal lies to this court from an order of the circuit court refusing leave to file a bill," etc. So in Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 226, 10 Sup. Ct. 736, 742, 34 L. Ed. 97: "The action of the circuit court * * * was taken in the exercise of a discretion with which we are not justified in interfering." So, in Buffington v. Harvey, 95 U. S. 99, 24 L. Ed. 381: "The decision of the court upon the issues of fact, so far as they depend upon the proofs, are conclusive on a bill of review." Again, page 100, 95 U. S., 24 L. Ed. 381: "The granting of a rehearing is always in the sound discretion of the court, and therefore granting or refusing it furnishes no ground of appeal." See, also, Steines v. Franklin Co., 14 Wall. 15, 20 L. Ed. 846. Transportation Co. v. Pearsall, 33 C. C. A. 161, 90 Fed. 435, is a case where a default was stricken off and the parties in the case restored to their rights. This was held

to be in the exercise of a power within the discretion of the court, and not reviewable on appeal; and at page 437, 90 Fed., page 163, 33 C. C. A., there is a useful collection of authorities (which need not be enumerated) in respect to the discretionary control which the court of first instance may exercise over its orders and judgments, including that of reopening the case and granting or refusing new trials. See, also, Dexter v. Arnold, 5 Mason, 303, 315, Fed. Cas. No. 3,856; Wood v. Mann, 2 Sumn. 316, 334, Fed. Cas. No. 17,953; Nichols v. Nichols' Heirs, 8 W. Va. 174, 186.

While we might reasonably enough follow the precedents established by the supreme court, and affirm, as was done in Ricker v. Powell, 100 U. S. 104, 107, 25 L. Ed. 527, and other cases, to which I have referred supra, without deciding the precise question whether an appeal lies as a matter of right from an order like the one made below, it would quite likely be found, upon exhaustive examination of the question, that logic and principle would make the right of appeal depend upon whether the alleged error related to a matter of law apparent upon the record, or to questions of fact relating to newly discovered evidence, fraud, or mistake; and that while, in the first instance, the right of appeal would exist, the other class of questions would be treated as within the discretion of the court whose business it is to find the facts.

Now, quite aside from the question of the administration of justice under general rules of equity, and upon a distinct and different ground,—that of the constitutional right of a hearing,—is a decree based upon facts not submitted, and upon wrong papers through mistake, based upon the due process of law guarantied by the constitution?

The complainant's property rights have been concluded against him upon the allegations of an answer not submitted, and upon which he has not been afforded an opportunity to be heard. This, it seems to me, is in contravention of the constitutional provision which guaranties to all parties due process of law. Amendment 5 of the constitution does not relate alone to forms of procedure, but to substance, and to the intermediate steps involved in the course of the proceedings and trial. It may be stated as a general rule that the term "due process of law" means a course of legal proceedings according to those rules and principles which have been established by our jurisprudence for the protection and enforcement of private rights. Again, law in its regular course is due process. Again, decision after full and fair trial is "due process of law." Pennoyer v. Neff, 95 U. S. 714, 24 L. Ed. 565; Kennard v. Louisiana, 92 U. S. 480, 23 L. Ed. 478; Hagar v. Reclamation Dist., 111 U. S. 701, 4 Sup. Ct. 663, 28 L. Ed. 569; Leeper v. Texas, 139 U. S. 462, 11 Sup. Ct. 577, 35 L. Ed. 225; Marchant v. Railroad Co., 153 U. S. 380, 14 Sup. Ct. 894, 38 L. Ed. 751. Again: "It is certain that these words, 'due process of law,' imply a conformity with natural and inherent principles of justice, and forbid that one man's property or right to property shall be taken, * * * and that no one shall be condemned in his person or property without an opportunity of being heard in his own defense." Holden v. Hardy, 169 U. S. 366, 390,

18 Sup. Ct. 383, 387, 42 L. Ed. 780. Again: " 'Due process of law' undoubtedly means in the due course of legal proceedings, according to those rules and forms which have been established for the protection of private rights." Cooley, Const. Lim. 433.

I do not propose to enlarge upon this view as applied to the situation in question. It seems to me plain that a party whose rights have been determined upon facts neither proven, assented to, nor before the court, and in respect to which he has not been heard, has not enjoyed the due process of law guarantied by the constitution. The importance of ·guarding carefully the sacred right of trial, and of providing a full and fair hearing upon the merits, was strongly set forth by Mr. Justice White in the recent case of Hovey v. Elliott, 167 U. S. 409, 17 Sup. Ct. 841, 42 L. Ed. 215, and I propose to leave this phase of the subject upon the vigorous and wholesome reasoning of that case, only calling attention to the discussion beginning on page 413, 167 U. S., and page 843, 17 Sup. Ct., 42 L. Ed. 215, where it is said: "The mere statement of this proposition would seem in reason and conscience to render imperative a negative answer. A fundamental conception of a court of justice is condemnation only after hearing." Again, at page 418, 167 U. S., and page 844, 17 Sup. Ct., 42 L. Ed. 215: "No one shall be personally bound until he has had his day in court, by which is meant until he has been duly cited to appear, and has been afforded an opportunity to be heard. Judgment without such citation and opportunity wants all the attributes of a judicial determination. It is judicial usurpation and oppression, and can never be upheld where justice is justly administered." Again, referring to Webster's definition of "the law of the land," which is held to be synonymous with "due process of law," Mr. Justice White adopts Judge Cooley's remark that the definition is apt and suitable as applied to judicial proceedings, which cannot be valid unless they proceed upon inquiry and render judgment only after trial.

In Hovey v. Elliott the answer was removed on grounds of contempt, and the bill taken pro confesso; and it was held that this was unwarrantable, and a denial of the rights of the defendant, and that the subsequent proceedings were not based upon due process of law. It is difficult to perceive any difference in principle between such a situation and the one involved in the case at bar. In one case the facts of the bill were taken as established by reason of a rule of court in respect to the circumstances under which a bill shall be taken pro confesso; in the other case the facts set out in an answer not before the court, and in respect to which the complainant had never been heard, were adopted for purposes of decision, through mistake, and taken as established by the rule in respect to cases submitted on bill and answer. What is the difference in principle, and what is the difference, pray, in oppressive consequences, between removing an answer by an unauthorized order and deciding against the defendant without hearing upon the allegations of the bill, and an unauthorized decision against the plaintiff without a hearing and through mistake upon the allegations of an answer not before the court? One is a wrong order based upon an unauthorized ruling,

while the other is a wrong order based upon an unauthorized assumption of facts. Neither decision is based upon due process of law, and the consequences are equally dire in both cases.

Quite aside from technical reasoning, does not the question answer itself, can due process of law be based upon a mistake of the court as to the state of the pleadings, which concludes a party's rights without affording him an opportunity to be heard?

Now, as between these parties, with no third-party interests intervening, why should the doctrine of laches be invoked to uphold a decree based upon a mistake, and a mistake which denied one party the right to be heard, and concluded his rights upon facts not submitted, and gave to the other something which he was not entitled to?

The question of laches is one which has generally been treated as involving matter to be resolved by the sound discretion of the court below. In Brown v. Buena Vista Co., 95 U. S. 157, 24 L. Ed. 422, the court, in speaking of the power of equity to relieve against a judgment upon the ground of fraud in a proceeding directly for that purpose, which it says is well settled, and that the power extends to cases of accident and mistake, said, at page 160, 95 U. S., 24 L. Ed. 422, upon the question of laches: "A court of equity applies the rule of laches according to its own ideas of right and justice. Every case is governed chiefly by its own circumstances. Whether the time the negligence has subsisted is sufficient to make it effectual is a question to be resolved by the sound discretion of the court." In Thomas v. Brockenbrough, 10 Wheat. 146, 151, 6 L. Ed. 287, where the question was whether a bill of review upon new matter was barred by a statutory limitation of five years, the court said that "is a question which need not be decided in the present case, since we are all of opinion that it is in the discretion of the court to grant leave to file a bill of review for that cause."

Laches is an equitable defense, not one of absolute right. It interposes as a defense when general and third-party interests would be disturbed, and when inequity would be done, by granting relief after lapse of time. Here there are no general rights or third-party interests to be disturbed. No inequity would result from granting the relief sought in this case. It is simply proposed in a proceeding between the original parties to right a mistake.

Irrespective of statutes, whether delay will amount to laches sufficient to bar relief is a question largely, if not wholly, within the sound discretion of the court, to be determined by the particular circumstances of each case; and the cases all seem to proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the equity or inequity of permitting the claim to go forward. Galliher v. Cadwell, 145 U. S. 368, 12 Sup. Ct. 873, 36 L. Ed. 738, is a useful case on this point. There it is said, at page 372, 145 U. S., and page 874, 12 Sup. Ct., 36 L. Ed. 738, in speaking of the cases on the subject, that "they proceed on the assumption that the party to whom laches is imputed has knowledge of his rights, and an ample opportunity to establish them in the proper forum; that by reason of his delay the adverse party has good reason to believe that the alleged rights are worthless, or have been

abandoned; and that, because of the change in condition or relations during this period of delay, it would be an injustice to the latter to permit him now to assert them." Again, at page 373, 145 U. S., and page 875, 12 Sup. Ct., 36 L. Ed. 738: "But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time, but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties." See, also, Townsend v. Vanderwerker, 160 U. S. 171, 186, 16 Sup. Ct. 258, 40 L. Ed. 383, where the same principles are reiterated, and where it is said that the death of one of the parties to the agreement and the loss of her testimony does not necessarily operate as an obstacle to the maintenance of the bill, but is a circumstance to be considered by the court in weighing the evidence. See, also, Gunton v. Carroll, 101 U. S. 426, 428, 25 L. Ed. 985.

In Cawley v. Leonard, 28 N. J. Eq. 467, 471, it is said that a mere lapse of time is not sufficient to take away the right of a party to be heard in a court of equity where there has been no laches and there are no intervening rights of others which may be unjustly disturbed. In the same case it is observed, at page 470, upon the question whether a decree should be opened, that "these applications are always addressed to the sound discretion of the court"; and in Kemp v. Squire, 1 Ves. Sr. 205, Lord Hardwicke said, on application to set aside the enrollment of a decree on circumstances, "Any court of justice will incline, as far as in its power, to open what is concluded, that the merits may come before the court." See, also, Story, Eq. Pl. § 417; Beames' Orders Ch. 1; Massie v. Graham, 3 McLean, 41, 52, Fed. Cas. No. 9,263.

It is not necessary in this case to maintain the extreme view, although sustained by high authority, that laches is altogether a matter of discretion for the court of first instance, for it is quite sufficient for the purposes of the case at bar to say that it is so far a question of fact, and so far a matter within the discretion of the judge to whom it is presented, that a finding will not be disturbed by an appellate court unless it clearly appears to be contrary to evidence and contrary to equity. Such is not the condition in this case.

Every consideration of equity requires this court to look with favor upon this proceeding, and to reach a result which shall give this man a trial of his cause upon the merits, or at least a hearing upon the bill and answer as they stood when his case was submitted. With the situation of the parties unchanged, the doctrine of laches, administered under wholesome rules of equity, will be slow to deprive this party of his constitutional right of trial. He at once challenged the dismissal of the bill, and in various ways brought the matter to the attention of the court and to the adverse party, and, as appears at page 13 of the record, as early as March 27, 1887, filed a petition for a supplemental bill to restore his rights under the lost answer of June 29th, on which the case was submitted. The petition is still undecided, and has been pending since 1887. He several times moved for a rehearing, and, not succeeding in pointing out to the satisfac-

tion of the court the ground of the mishap, he was repeatedly met with adverse result, and finally succumbed to the moral and legal force involved in repeated adverse decision. His submission under such circumstances should be treated as involuntary. A man need not resort to revolution, or be constantly before the court, in order to relieve himself from the charge of laches as between himself and a party who holds against him a wrong and unauthorized decree.

Quite likely this party did not resort to the most effective means of relieving himself from the consequences of the mistake which deprived him of his rights. It is probable that he never clearly saw what the mistake was, or rather how the mistake happened, until it was pointed out by the court in the opinion and the findings on which the decree vacating the early decree was based. He proceeded until that time upon the idea that he was the victim of fraud, rather than mistake. It is apparent, from reading the various opinions and rescripts of the circuit court, that the court never discovered the mistake, or how it happened, until final hearing under this petition, and the examination of the record de novo. So the mistake is a newly discovered one, and the relief to which the petitioner is entitled is grounded upon something disclosed in a hearing, where all the parties were present with their interests represented.

It is true that the petitioner proceeded upon allegations of fraud, but upon a full hearing in respect to the question as to how the decree dismissing his bill originated, and upon general prayer for relief, the court has found that it resulted from mistake, rather than fraud. Mistake is an equitable ground for relief, and, the merits respecting the ground of relief having been fully heard, he should be permitted to reframe his allegations, to the end that he shall receive what in equity he is entitled to.

Courts are disposed to be liberal in respect to matters where the parties have not been heard upon the merits. In Gregory v. Pike, 15 C. C. A. 33, 67 Fed. 837, 846, the court of appeals treated a cross bill as an intervening petition. In Sherman v. Association (recently decided in this circuit) 113 Fed. 609, it is said, in effect, that, were the question one of substance, it could probably be met by reframing the bill, for which leave would, of course, be granted. So, in this case, for purposes of relief, there being a general prayer, we should treat it, though somewhat in the form of a bill of review, as a summary proceeding in the nature of a petition or supplemental bill, or a bill in the nature of a bill of review. It has been frequently said that it is quite unimportant how such a bill is denominated, or what it is called. Courts have indulgently applied elastic rules of practice to such proceedings, treating a bill of review as a petition for carrying a decree into execution (Thompson v. Maxwell, 95 U. S. 391, 24 L. Ed. 481), or as a petition for rehearing (Martin v. Smith, 25 W. Va. 579; Heermans v. Montague [Va.] 20 S. E. 899, 902), or one not sustainable upon its allegations may be entertained for fraud (Sayre v. Lewis, 5 B. Mon. 90; Harris v. Hanie, 37 Ark. 354; Williams v. Murphy, 1 Port. [Ala.] 44), and a defective bill of review has been treated as a cross-bill (2 Bro. Parl. Rep. by Tomlins, 88; Story, Eq. Pl. [10th Ed.] § 401, note 2a). The object of such bills

or petitions is to bring the party again before the court to have something reviewed which it is claimed ought not to stand; and, although the relief is prayed for, on the ground of fraud, it may be accorded on the ground of inadvertence, accident, or mistake. See 1 Daniell, Ch. Pl. & Prac. 378, note 2.

The plaintiff's bill has a double aspect. It alleges fraud against the defendants, and also alleges, in effect, that the court, against whom no fraud is charged, was led into a mistake by the course taken by the defendants; so the relief, in one aspect of the bill, was sought on the ground of mistake, and the relief may be granted on that ground. Williams v U. S., 138 U. S. 514, 517, 11 Sup. Ct. 457, 34 L. Ed. 1026.

The power to undo, in a summary manner, what has been done by a court with no authority or jurisdiction, is unquestioned. The jurisdiction exercised by the circuit court in this case with respect to the order of dismissal was only to undo, by its own order, that which, according to its own findings, it had no authority or jurisdiction to do in the first instance; and, as said in Fuel Co. v. Brock, 139 U. S. 216, 219, 11 Sup. Ct. 523, 524, 35 L. Ed. 151, "the power is inherent in every court, whilst the subject of controversy is in its custody and the parties are before it, to undo what it had no authority to do originally." And, further, "Jurisdiction to correct what has been wrongfully done must remain in the court so long as the parties and the case are properly before it, either in the first instance or when remanded to it by an appellate tribunal." True, there it was a writ of error, where, upon remand, the relief could be had by motion, and it was a case where there was no authority or jurisdiction except to undo the wrong which the courts had done; but the reasoning of the supreme court, at page 220, 139 U. S., and page 525, 11 Sup. Ct., 35 L. Ed. 151, with respect to contemplated subsequent proceedings below, illustrates the summary manner in which an unauthorized act of the court is righted, the essential and "only requisite being that the opposite party shall be heard." And, at page 220, 139 U. S., and page 525, 11 Sup. Ct., 35 L. Ed. 151, it is said: "The mode of proceeding to effect this object must be regulated according to circumstances, * * * and that all needed inquiry can be had to guide its judgment in a summary proceeding."

The petitioner's right to relief in a case like this should not be denied him, either because he failed to invoke the most effective remedy or because he misconceived the ground for relief. The learned judge, in the majority opinion, at page 811, 114 Fed., in discussing the merits of the question, says: "We are forced to the conclusion that the alleged answer of June 29th was of the character which we have stated, and that it could not have been of any consequence on the hearing which occurred in the original cause." As I have undertaken to point out, the harm did not result from the consequence or inconsequence of the answer of June 29th. The harm resulted from accepting as conclusive the probative force of the allegations of the answer of July 21st, which was never submitted, and which the circuit court finds never was submitted, and the unauthorized consideration of which deprived the petitioner of a hearing and his day in court.

It was not the absence or the unimportance of the answer of June 29th, but the unauthorized presence of the answer of July 21st, that dethroned the plaintiff and overthrew his rights.

I take the ground that, regardless of the general rules, to which attention has been called in the majority opinion, and regardless of general expressions in the books which could have had no reference to a situation like this, the court should find a way to right a wrong for which it is responsible, like the one found by the circuit court to exist in this case. I maintain that there is no controlling authority applicable to this situation, because such a situation was never before presented; and, if there are general expressions which would seem to hold that a technical final decree like this should stand, though based upon mistake, such expressions should be disregarded. A fact necessary to jurisdiction over the subject-matter, namely, that the answer was before the court, was inadvertently assumed by the circuit court through mistake. Upon such unauthorized assumption the order was based. The court had no power to make the order, because the facts which were supposed to be before the court were not before it. It should, therefore, be treated as void. While not precisely so as to the entire proceeding, the act was surely coram non judice as to the finding in question, because the court had no jurisdiction over either the person, the cause, or the process, so far as this answer was concerned. While not precisely the same, the order stands in principle somewhat like an award of arbitrators which goes beyond the submission, and more like a decision of a court based upon lack of jurisdiction of the subject-matter and of the parties, which would be treated as void, and would be vacated, without much, if any, regard to the question of time, rather than like a right which cannot be disestablished. It is contrary to the idea of law, and it is contrary to the plain and simple rules of natural justice, that a decree based upon a mistake of fact in respect to the state of the pleadings preliminary to the merits, which operated to dismiss the petitioner's bill, and to foreclose his rights without hearing, should stand as a solemn and conclusive adjudication and bar.

It is difficult to see upon what line of reasoning such a decree can be justified or upheld. The order of dismissal was absolutely without authority, and therefore contrary to equity and contrary to law. It was the plain duty of the circuit court, upon discovery of the mistake, to do what it did do,—vacate the order at once. There is no principle of law or consideration of equity which calls for a reversal of that court. On the contrary, every principle of law and every consideration of equity and conscience requires that the circuit court should be affirmed. It is quite plain that such a decree is against justice and against conscience, and, viewed aside from the reasoning in the books in respect to decrees based upon hearings upon the merits, and in the simple light of a decree based upon an order of dismissal through mistake before hearing upon the merits, it is clear that there is no reason why it should stand; and, in the absence of controlling authorities in support of such a proposition, it is impossible for me to accept a line of reasoning which upholds or justifies a decree like the one in question in the face of the express finding

of the judge who dismissed the bill that the decree of dismissal was founded upon a mistake which deprived the party of a hearing upon the merits, and one which, for that reason, ought not, in justice or equity, to stand.   It is an absolute and inalienable right of a plaintiff that his case shall not be decided against him by mistake upon the strength of a distinct and different answer, filed after he has submitted his case, and one upon which he has not been heard.   It is a fundamental right, which cannot be wrested from a party by a pure mistake of the court in dismissing his bill upon a wrong paper preliminary to the merits.   It is a right which cannot be withheld from a party through a mistake of the court which denies to him the right of a hearing and due process of law.   The general rule of stare decisis, or the general rule in respect to the inviolability of decrees, enforced by an appellate tribunal upon a court of equity of first instance, to compel that court, against its own findings, to blindly hold itself and an aggrieved and injured party to a mistake like the one in question, —a mistake so destructive to fundamental right,—would not long stand the test of critical and discriminating legal opinion.

I think the decree of the circuit court vacating the order of dismissal should be affirmed; but if, because the allegations of fraud are not sustained by the evidence, as found by the court below, the decree should not be affirmed for that reason, then the case should be remanded, with directions to grant leave to the petitioner to reframe his allegations and prayer, to the end that the relief shall stand upon the ground of mistake, where the circuit court, after fully hearing the parties, intended it should stand.